**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ISIDRO CALONIA, JR., individually and on behalf of all others similarly situated,** | |
| Plaintiff, | Case No: 20-cv-6130 |
| v. | |
| **TRINITY PROPERTY CONSULTANTS, LLC,** | Hon. Thomas M. Durkin |
| Defendant. | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS**
**<u>MOTION TO DISMISS</u>**


Dated: December 7, 2020                    Respectfully submitted,

                                           */s/Michael Gotzler*
                                           _____

Michael R. Gotzler
*mgotzler@littler.com*
LITTLER MENDELSON, P.C
10 East Doty Street, Suite 800
Madison, Wisconsin 53703
608.287.3701

Jennifer L. Ciralsky
*jciralsky@littler.com*
LITTLER MENDELSON, P.C.
111 East Kilbourn Avenue, Suite 1000
Milwaukee, Wisconsin 53202
414.291.5536

*Attorneys for Defendant Trinity Property Consultants, LLC*

Defendant Trinity Property Consultants, LLC ("Defendant" or "Trinity Property"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), hereby moves to dismiss Plaintiff's Class Action Complaint ("Complaint") in its entirety. In support of its Motion, Defendant states as follows:

## INTRODUCTION

Plaintiff, as the sole named plaintiff, alleges violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*., based on Defendant's employee timekeeping practices and system. Defendant, however, never employed Plaintiff nor collected, stored or used his biometric information. Just as significantly, Plaintiff's actual employer provided him with all BIPA-required notices and obtained his informed consent *before* Plaintiff first utilized a timekeeping system that scanned a portion of his fingerprint, thus making dismissal of Plaintiff's Complaint appropriate. The lawsuit should also be dismissed because BIPA is unconstitutional "special legislation" in violation of Article IV, Section 13 of the Illinois Constitution. Finally, Plaintiff's BIPA claims are preempted by the exclusive remedy provisions of the Illinois Workers' Compensation Act ("IWCA").

## RELEVANT FACTS

In his Complaint, Plaintiff alleges that he worked for Defendant in Illinois "through April 2020." (Compl. ¶27). Plaintiff alleges that Defendant required Plaintiff to provide his fingerprint or fingerscan in connection with its payroll/time-keeping system. *Id.* ¶28. Tellingly, Plaintiff does not allege any particular date when he first provided his fingerprint. Plaintiff further alleges that Defendant did not inform Plaintiff in writing of the specific purpose and length of term for which it was collecting, storing, and using his biometrics; that it did not provide a publicly available retention schedule; that Plaintiff did not consent in writing; and that Plaintiff did not sign any release related to his fingerprint and associated biometrics. *Id*. ¶¶30-32. Based on these

1

allegations, Plaintiff pleads the legal conclusion that Defendant violated BIPA. The simple facts, however, demonstrate that Defendant never employed Plaintiff, Defendant never collected, stored or used Plaintiff's biometrics, and that Plaintiff received all BIPA-required notices from his actual employer and provided informed consent *before* he first provided his biometric information as alleged in the Complaint.

## LEGAL STANDARD

When deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the district court accepts the factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Rueth v. EPA*, 13 F.3d 227, 229 (7th Cir. 1993). The burden of proof is on the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co*., 322 F.3d 942, 946 (7th Cir. 2003). Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 570 F.3d 440, 444 (7th Cir. 2009). Here, Defendant factually attacks the Complaint because: (1) Plaintiff was never employed by Defendant; (2) Defendant never collected, stored or used his biometrics; and (3) Plaintiff received all BIPA-required notices and gave informed consent before ever providing his biometric information. Plaintiff therefore lacks the requisite standing. *Id.* at 445.

"Dismissal for failure to state a claim under Rule 12(b)(6) is proper 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). When reviewing a 12(b)(6) motion to dismiss, "the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff can "plead himself out of court … by alleging facts inconsistent with

2

his theory of relief." *See Elmore v. Salas*, 2016 WL 2755326, *4 (N.D. Ill. May 12, 2016). If a plaintiff's allegations themselves demonstrate that his claims are barred by the IWCA exclusive remedy provision or the applicable statute of limitations, his complaint must be dismissed for failure to state a claim. *See Doe v. La Magdalena II, Inc.*, 585 F. Supp. 984, 986 (N.D. Ill. 2008) (negligence claims preempted by the IWCA's exclusive remedy provisions). Constitutional challenges to an Illinois statute are properly brought pursuant to Rule 12(b)(6). *See Friends of the Parks v. Chicago Park Dist.*, 160 F.Supp.3d 1060, 1066 (N.D. Ill. 2016) (constitutional challenge based on Illinois Constitution's "special legislation" clause properly raised in Rule 12(b)(6) motion to dismiss).

## ARGUMENT

Not only does Plaintiff lack standing to sue Defendant, requiring dismissal under Rule 12(b)(1), but Plaintiff's Complaint also fails to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 664; *Twombly*, 550 U.S. at 555. More specifically, Plaintiff's claims fail for four independent reasons: (1) he was never employed by Defendant and Defendant never collected, stored or used his biometrics — a requirement for standing; (2) he received all BIPA-required notices and provided informed consent from his actual employer before first providing any of his biometric information; (3) BIPA is unconstitutional as special legislation; and (4) his claims are preempted by the Illinois Workers' Compensation Act. For each of these reasons, as well as the reasons and authorities set forth below, Plaintiff's claims against Defendant should be dismissed with prejudice in their entirety.

**A.     The Complaint Must Be Dismissed Because Defendant is an Improper Party.**

The threshold inquiry for this Court is whether Plaintiff has standing to bring his claims. Unless Plaintiff has standing, a federal district court lacks subject matter jurisdiction to address the merits of the case. *Perry v. Vill. Of Arlington Heights,* 186 F.3d 826, 829 (7th Cir. 1999). To

satisfy the case-or-controversy requirement of Article III of the United States Constitution, plaintiffs must show that they have "suffered 'injury in fact,' and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61(1992)). The requirement of standing is not lessened for an individual plaintiff who files a class action or collective action complaint. As one federal district court opined, "[t]he principles at the heart of Article III standing are simply too important to permit such bootstrapping" on the theory that some member of a hypothetical class might have a claim against that defendant. *In Re Eaton Vance Corp. Securities Litig.*, 220 F.R.D. 162, 169 (D. Mass. 2004) (holding named class action plaintiffs failed to establish standing as to two defendants from whom they did not personally purchase shares).

BIPA prohibits an employer or other entity from collecting, storing or using a person's biometric information without first providing certain specific notices and receiving the person's informed consent. 740 ILCS 14/15. Although Plaintiff asserts that Defendant was both his employer and collected, stored and used his biometric information, neither is true and neither is properly or sufficiently pled.

Defendant was never Plaintiff's employer. (Beck Decl. ¶8). Instead, at all times relevant to the Complaint, Plaintiff was employed by Pacific Personnel Services, Inc. ("Pacific Personnel"). (Beck Decl. ¶7). In the Complaint, Plaintiff does not allege a single particular fact regarding his alleged employment relationship with Defendant. Rather, he offers mere conclusory statements that "Plaintiff worked for Trinity in Illinois through April 2020" (Complt. ¶27) and that "As an employee, Trinity required Plaintiff to scan Plaintiff's fingerprint . . ." (Complt. ¶28). These are mere conclusory statements with no factual support. Furthermore, the actual evidence in this case conclusively establishes that Plaintiff was never employed by Defendant.

4

Defendant also never retained, collected or used Plaintiff's biometric information, although Plaintiff summarily concludes otherwise. (Complt. ¶¶28-29). Again, the indisputable evidence conclusively establishes that Plaintiff's actual employer, Pacific Personnel, operated the ADP timekeeping system that scanned a portion of Plaintiff's finger. (Beck Decl. ¶¶20-21).

In sum, because Plaintiff was never employed by Defendant and because Defendant never collected, stored or used his biometric information, Plaintiff lacks standing to bring BIPA claims against Defendant—the only claims asserted here. Consequently, his claims should be dismissed for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).

**B.      Even if Defendant is A Proper Party, The Complaint Must be Dismissed Because Plaintiff Received All BIPA-Required Notices and Provided Informed Consent Before His First Biometric Scan.**

Even if Trinity Property is somehow a proper defendant, the Complaint must still be dismissed in its entirety because Plaintiff received all BIPA-required notices and provided his BIPA-required informed consent *before* providing his biometric information as described in the Complaint. BIPA is an informed consent statute which makes it unlawful for a company to "collect, capture, purchase, receive through trade or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . .in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information."

740 ILCS 14/15(b).

On August 25, 2019, more than three months *before* Plaintiff first scanned a portion of his fingerprint (on December 17, 2019), Pacific Personnel (Plaintiff's employer) provided Plaintiff

with its Biometric Data Privacy Policy ("BIPA Policy"). (Beck Decl. ¶¶12, 24). In full compliance and complete satisfaction of all BIPA requirements, the BIPA Policy: (1) informed Plaintiff that biometric information would be collected or stored via Pacific Personnel's timekeeping system that relied on finger scan technology; (2) informed Plaintiff in writing of the specific purpose and length of time for which his biometrics were being collected, stored, and used (i.e., for purposes of employee identification and fraud prevention biometric data would be retained until the first of the following occurs: employee's employment with company terminates, employee moves to role within company for which biometric data is not used, or 3 years from the employee's last interaction with company); and (3) provided a publicly available retention schedule and guidelines for permanently destroying Plaintiff's biometrics. (Beck Decl. ¶12, Exhibit 1 to Beck Decl.). Finally, when Plaintiff completed his review of the BIPA Policy, he acknowledged receipt and provided Pacific Personnel with his consent for Pacific Personnel to collect, store and use his biometric data as described in the policy. (Beck Decl. ¶17, Exhibits 3, 4 to Beck Decl.). Thus, by the time Plaintiff first provided his fingerprint, on December 17, 2019, he had received the BIPA-required notices and provided his informed consent.[1]

Defendant attaches documents to this motion to dismiss that are both central to Plaintiff's claims and authentic: Plaintiff's BIPA notice and informed consent. Based on the nature and relationship of these documents to the Plaintiff's claims, this motion should not be treated as one for summary judgment under Rule 56. District courts are permitted to examine documents attached to a Rule 12(b) motion to dismiss if they are referred to in the complaint, central to the plaintiff's claims, and authentic. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). *See also*

---

[1] Plaintiff does not allege any particular date on which he provided his fingerprint. The documentation provided in support of this motion demonstrates that Plaintiff first provided his fingerprint within the statute of limitations period that Defendant asserts is applicable here: one year.

*Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (affirming a district court's consideration of documents attached to a motion to dismiss and noting the Seventh Circuit "has been relatively liberal in its approach to the rule articulated in *Tierney*"). The purpose of this narrow exception to Rule 12(d) is to prevent parties from surviving a motion to dismiss by artful pleading or failing to attach relevant documents. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). Here, the documents attached to Defendant's motion to dismiss are integral to the Complaint, central to Plaintiff's claims, and authentic.

Having received all BIPA-required notices and having provided the BIPA-required informed consent before first providing his biometrics, there was no violation of BIPA as to Plaintiff. Thus, Plaintiff's Complaint must be dismissed with prejudice for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). Alternatively, Plaintiff's Complaint should be dismissed with prejudice because it fails to state a claim upon which relief can be granted.

**C.     The Complaint Should Be Dismissed With Prejudice Because BIPA Is Unconstitutional "Special Legislation" Under The Illinois Constitution.**

Article IV, Section 13 of the Illinois Constitution requires the Illinois legislature to pass "general" laws that apply to similarly situated persons and entities – not "special legislation" that discriminates in favor of certain classes of persons or entities:

> The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination.

Ill. Const. 1970, Art. IV. §13. The special legislation clause "expressly prohibits the General Assembly from conferring a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated." *Best v. Taylor Machine Works*, 179 Ill.2d 367, 391 (1997). The prohibition is designed "to prevent arbitrary legislative classifications that

discriminate in favor of a select group without a sound, reasonable basis." *Id*. An Illinois statute is an unconstitutional special law "if there is no rational explanation for why that law cannot be applied to all persons or entities in the State, or if there is no rational explanation for why [it] … should not also be applied to the persons or entity which the law at issue singles out." *County of Bureau v. Thompson*, 139 Ill.2d 323, 346 (1990).

BIPA contains several exemptions that remove specific organization, entities and employers from its coverage. Of note for purposes of its constitutionality, BIPA arbitrarily excludes (1) all private entities that fall within the very broad definition of a "financial institution or an affiliate of a financial institution subject to Title V of the federal Gramm-Leach-Bliley Act," and (2) all private entities when working as a government contractor or subcontractor. 740 ILCS 14/10, 14/25(c) and (e). With these exemptions, the Illinois legislature clearly conferred the benefits of biometric technology on financial institutions and government contractors without the costs of compliance while denying their respective employees the privacy rights the legislature was purportedly advancing. These exclusions are impermissibly arbitrary because they bear no rational relation to the achievement of BIPA's stated goals. *Grasse v. Dealer's Transport Co*., 412 Ill.2d 179, 195 (1952).

1.    **BIPA's Exclusion of 12 Types of Financial Institutions and Government Contractors has No Rational Relation to BIPA's Fundamental Purpose.**

When analyzing these express exclusions from BIPA, the test this Court applies is whether "the classifications created by the statute" are "rationally related to achievement of the statute's legitimate goals." *County of Bureau*, 139 Ill.2d at 337. The many classes excluded by BIPA are simply not rationally related to BIPA's purpose, which is to regulate the collection, use, safeguarding, handling, storage, retention and destruction of biometric identifiers and biometric information. 740 ILCS 14/5(g).

8

### a.   Excluding 12 types of "financial institutions" from BIPA's coverage bears no rational relation to BIPA's purpose.

BIPA excluded from its coverage all private entities that fall within the broad definition of a "financial institution or an affiliate of a financial institution," 740 ILCS 14/25(c), as follows:

> Nothing in this Act shall be deemed to apply in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder.

Regulations promulgated pursuant to the Gramm-Leach-Bliley Act demonstrate how broadly the term "financial institution" is defined.  16 C.F.R. §313.3(k)(1)-(2).  The practical consequence of the General Assembly's carve-out for many categories of Illinois financial institutions and their affiliates from BIPA's coverage leaves all of the following types of employers, businesses and entities unregulated by BIPA:

(1)   retailers that issue their own credit cards;
(2)   personal property and real estate appraisers;
(3)   car dealerships that lease cars;
(4)   career counselors providing services to persons currently in, recently displaced from or who are interested in working in a financial organization;
(5)   businesses that prints or sells checks for consumers;
(6)   businesses that regularly wires money to and from consumers;
(7)   check cashing businesses;
(8)   accountant or tax preparation services that completes tax returns;
(9)   businesses operating a travel agency in connection with financial services;
(10)   entities providing real estate settlement services;
(11)   mortgage brokers; and
(12)   investment advisory companies and credit counseling services.

16  C.F.R. §313.3(k)(2)(i) - §313.3(k)(2)(xii).

The arbitrary nature of BIPA's exclusion of these financial institutions is also evident in how Title V of the Gramm-Leach-Bliley Act ("Title V") only protects the privacy and confidentiality of the financial institution's *customer* information – not that of its *employees*:

> It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. §6801(a) (emphasis added). BIPA and Title V thus extend privacy protections to very different groups of individuals and with regard to very differing types of information. Most notably, Title V does not regulate data collected from employees of financial institutions, such as biometric fingerprint scans used to record time worked. Title V also does not preempt state laws that provide greater protection and instead only preempts inconsistent state laws. 15 U.S.C. §6807(a), (b). Finally, Title V protects financial information and BIPA protects biometric information. Thus, BIPA's exemption of financial institutions and affiliates subject to Title V confers a special benefit on the many entities that meet this broad definition and leaves the employees of these entities without BIPA's protections.

There is no rational explanation for this differing treatment of employees (and consumers) of financial institutions and for conferring a special benefit upon financial institutions. Illinois courts have found unconstitutional laws that exempt certain entities for reasons not "rationally related to achievement of the statute's legitimate goals." *See Allen v. Woodfield Chevrolet, Inc.*, 208 Ill.2d 12, 18 (2003) (invalidating amendments to the Consumer Fraud Act that conferred a special benefit on auto dealers by making it more difficult for plaintiffs to file lawsuits or collect punitive damages from them); *Grace v. Howlett*, 51 Ill.2d 478, 486-87 (1972) (striking down law that placed limit on recovery of damages inflicted by commercial motorists but not by private motorists); and *Skinner v. Anderson*, 38 Ill.2d 455, 457-59 (1967) (invalidating a statute of repose for construction-related injuries for architects and contractors, but not other potential defendants in the construction process). For the same reasons, the Illinois legislature's decision to confer a special benefit on the many categories of entities that meet the broad definition of "financial institutions" and "affiliates" is not related to BIPA's purpose no rational explanation is evident.

   b. **Excluding private entities from BIPA's coverage merely because they contract or subcontract with State or local agencies is an arbitrary distinction that bears no rational relation to BIPA's purpose.**

BIPA also excludes contractors, subcontractors or agents of a state agency or local unit of government from the Act's coverage when working for that agency or local unit of government, 740 ILCS 14/25(e):

> Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government.

Notably, this exclusion does not specify a minimum contract size – meaning a private entity's single engagement with a state agency or local unit of government would result in the consumers and employees of the contractor having no BIPA protection.

As with the exclusion for many types of financial institutions, there is no rational reason for BIPA to regulate and protect employees of private entities but then deny those very same employees BIPA's protections when their employers contract or subcontract with state or local agencies. Employees of government contractors and subcontractors should not lose their fundamental "right to privacy in and control over their biometric identifiers and biometric information" just because their employer contracted to perform work for a government agency. Being able to evade BIPA merely by contracting with the government, apparently in even a single instance, is irrational. This exclusion is thus impermissibly "designed primarily to confer a benefit on a particular private group without a reasonable basis, rather than to promote the general welfare." *Best*, 179 Ill.2d at 396.

**D.     Plaintiff's BIPA Statutory Damages Claim Is Barred By The IWCA's Exclusive Remedy Provisions.**

The IWCA makes workers' compensation the exclusive remedy for "accidental injuries arising out of and in the course of the employment." 820 ILCS 305/5(a) and 11. *See Folta v. Ferro Engineering*, 2015 IL 118070, ¶12 ("In exchange for a system of no-fault liability upon the employer, the employee is subject to statutory limitations on recovery for injuries … arising out

of and in the course of employment"). Section 5(a) of the IWCA makes the "exclusive remedy" provisions applicable not only to "common law" actions but also to a "statutory right to recover damages from the employer" such as BIPA. 820 ILCS 305/5(a). Section 5(a) limits employees to the compensation provided by the IWCA when they have a "common law or statutory right to recover damages from the employer" for "injury … sustained … while engaged in the line of his duty":

> No common law or statutory right to recover damages from the employer, his insurer, … or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act….

820 ILCS 305/5(a). Section 11 explicitly states that the compensation provided by the IWCA is the employer's full "measure of responsibility" for "accidental injuries sustained by any employee arising out of and in the course of the employment":

> The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer … for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act….

820 ILCS 305/11.

Taken together, these two sections of the IWCA bar Plaintiff action here unless he proves his injury: (1) was not accidental but intentionally inflicted by defendant, (2) did not arise from his employment, (3) did not occur during the course of his employment, or (4) is not compensable under the IWCA. *Meerbrey v. Marshall Field & Co., Inc*., 139 Ill. 2d 455, 462-63 (1990). The Complaint simply does not plead any of these exceptions to the IWCA's exclusivity rule. Instead, the Complaint's allegations show the exclusive remedy provisions, an "accidental injury that arises out of and in the course of employment" are, in fact, met.

**1.     The Complaint Pleads An "Accidental Injury" Because It Does Not Allege That Defendant Acted With Specific Intent To Injure Plaintiff.**

The IWCA's exclusive remedy provisions have an accidental injury requirement so employers cannot intentionally injure employees and then argue that employee lawsuits should be preempted by the Act. *Copass v. Illinois Power Co.,* 211 Ill.App.3d 205, 212 (4th Dist. 1991). Workplace injuries are construed to be "accidental" within the meaning of the exclusive remedy rule, however, unless the complaint alleges the employer specifically intended to injure plaintiff. *Id.* at 212-14. This is called the "specific intent to injure plaintiff" rule in cases applying the IWCA's exclusive remedy test. To strip the injury of its accidental character, the Plaintiff must allege the employer acted with "specific intent to injure plaintiff." *Id.* at 214; *Mayfield v. ACME Barrel Co.*, 258 Ill.App.3d 32, 35 (1st Dist. 1994) ("only when the employer acts with specific intent to injure the employee that the resultant injury is stripped of its accidental character"); *Bercaw v. Domino's Pizza, Inc.*, 258 Ill.App.3d 211, 217 (2d Dist. 1994) (affirming IWCA preemption and finding the alleged injury accidental where plaintiffs alleged no intent to harm).

Here, the Complaint does not allege (or even imply) a specific intent by Defendant to injure Plaintiff. Instead, it repeatedly alleges what Defendant failed to do. Because the Complaint does not allege Defendant intended to injure Plaintiff, the alleged injury remains accidental under the exclusive remedy rule. Plaintiff cannot therefore establish the first exception to the IWCA exclusivity rule.

**2. The Complaint Pleads Facts To Show That The Injury "Arises Out of" Plaintiff's Employment – i.e., There Is A Causal Connection Between His Employment And Injury.**

The IWCA's exclusive remedy test requires the alleged injury to "arise out of" the employment to ensure the injury is causally connected to the employment. *Senesac v. Employer's Voc. Res.*, 324 Ill.App.3d 380, 386 (1st Dist. 2001). Under the IWCA, an injury "arises out of" and is causally connected to the employment "if, at the time of the occurrence, the employee was performing acts he was instructed to perform by his employer, acts which he had a common law

13

or statutory duty to perform, or acts which the employee might reasonably be expected to perform incident to his assigned duties." *Caterpillar Tractor Co. v. Indus. Comm.*, 129 Ill.2d 52, 58 (1989).

Here, the Complaint pleads facts to show the necessary causal connection between Plaintiff's employment and the alleged injury. It alleges that Defendant collected and stored Plaintiff's fingerprint during his employment without first complying with BIPA's notice and consent requirements. (Compl. ¶¶28-32). The Complaint alleges that Defendant further "required" Plaintiff to use the fingerprint scanner to clock in and out. (Compl. ¶29). Thus, Plaintiff's alleged injury is causally connected to his employment and to duties is was expected for perform incident to his assigned duties at work. The second exception under *Meerbrey* for injuries that did "not arise out of the employment" does not therefore apply.

### 3. The Complaint Pleads Facts To Show That The Alleged Injury Occurred "In the Course of" Plaintiff's Employment.

Injuries sustained on an employer's premises and during working hours while an employee performs his work duties are deemed to arise "in the course of the employment." *Caterpillar*, 129 Ill.2d at 57. Here, the Complaint alleges that Defendant had a biometric timekeeping system which used a fingerprint scanner to collect Plaintiff's fingerprint for the purpose of authenticating his identity and recording his time worked. (Compl. ¶¶28-32). It alleges that each day worked, Plaintiff was required to clock in using his fingerprint. (Compl. ¶¶29). Thus, the alleged injury Plaintiff sustained occurred during working hours, at the location where he worked, and while performing his job duties – i.e., in the course of his employment. As a result, the third exception – that the injury did "not arise in the course of his employment" – is inapplicable.

### 4. The Alleged Injury Would be Compensable under the IWCA.

The Illinois Supreme Court has explained the test for when an injury is compensable under the IWCA: "In order for an injury to be compensable under the Workers' Compensation Act, the

14

injury must arise out of and in the course of the employment." *Caterpillar*, 129 Ill.2d at 57. The Illinois Supreme Court has consistently construed Section 5(a)'s and Section 11's exclusive remedy provisions very broadly to hold that an injury will be found to be compensable under the Act when it arises out of and in the course of the employment. *Sjostrom v. Sproule*, 33 Ill.2d 40, 43 (1965) ("a 'compensable injury was one suffered in the line of duty, which meant that the injury arose out of and in the course of employment"); *Unger v. Continental Assurance Co*., 107 Ill.2d 79, 85 (1985) ("The pivotal question … is whether the injury alleged is compensable under the Act. An injury will be found to be compensable if it 'aris[es] out of and in the course of the employment.'").

Here, again, Plaintiff has pleaded himself out of his BIPA claim by alleging facts that show his injury arose out of and in the course of employment and is therefore compensable under the IWCA. The fourth and final exception to the exclusivity rule – that Plaintiff's alleged injury is not compensable under the Act – therefore does not apply.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint in its entirety with prejudice. Accordingly, Defendant also submits that Plaintiff's Motion for Class Certification and Request for Discovery on Certification Issues should be denied because Plaintiff cannot establish his claims against Defendant, as a matter of law.

4821-9113-8003.1 073447.1054