# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ISIDRO CALONIA, JR., individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>TRINITY PROPERTY CONSULTANTS, LLC and PACIFIC PERSONNEL SERVICES, INC.,<br><br>      Defendants. | Case No. 2020-cv-6130<br><br>Honorable Thomas M. Durkin |

## PLAINTIFF'S COMBINED MOTION AND MEMORANDUM OF LAW
## IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

David Fish
Mara Baltabols
Fish Potter Bolaños LLC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
*dfish@fishlawfirm.com*
*mara@fishlawfirm.com*


*Attorneys for Plaintiff and
Others Similarly Situated*

**I.     Introduction**

Plaintiff Isidro Calonia, Jr. filed this putative class action against Defendants Trinity Property Consultants, LLC ("Trinity") and Pacific Personnel Services, Inc. ("Pacific") for unlawfully collecting, using, storing, and his biometric data (*i.e.* fingerprints) in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*.

This case was originally filed against Trinity, and Trinity argued that it was not responsible for the alleged violations—that the biometric timeclocks were owned and operated by its management company, Pacific. Dkt. No. In response, Plaintiff sought leave to amend the complaint to add Pacific, which was granted. Dkt. Nos. 17-19. Thereafter, Defendants filed a Motion to Dismiss, arguing that they notified employees of a biometric policy through an online training program. Dkt. Nos. 20-21. Plaintiff disputed Defendants' arguments with his own declaration that he did not view the biometric policy and that it did not comply with BIPA. Dkt. No. 24. Defendant's Motion to Dismiss was denied based upon an issue of fact. Dkt. No. 38.

After the court issued its memorandum and opinion, the Parties exchanged written discovery. With the benefit of initial discovery, and further review of the alleged facts and issues, the Parties engaged in arms-length discussions and reached an agreement on key terms. The Parties reached a **non-reversionary** $154,480 class settlement for the 172 Settlement Class Members. This is a strong result for the Class as a whole and is structured to maximize the number of individuals who will receive a settlement payment: each Class Member will automatically be sent a payment unless they opt out. The settlement is fair, reasonable, adequate, and meets all requirements under Rule 23. The Court should grant preliminary approval and enter the proposed order.

**II.    Procedural History**

On June 12, 2020, Plaintiff filed a Class Action Complaint in the Circuit Court of DuPage County, Chancery Division, alleging that Defendants violated BIPA by requiring him and other employees to use a biometric timekeeping system as part of their jobs. (Dkt. No. 1-1). In particular, Plaintiff alleged that Defendants violated BIPA by failing to do four things:

1) Properly inform Plaintiff and Class Members in writing that their biometric information and/or identifiers were being collected;

2) Properly inform Plaintiff and Class members in writing of the specific purpose and length of time for which their biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information was being collected, stored, and used, as required by BIPA;

3) Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information, as required by BIPA; nor

4) Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information, as required by BIPA.

On January 8, 2021, Trinity removed the Litigation from state court to the United States District Court for the Northern District of Illinois. Dkt. No. 1. On December 7, 2020, Trinity filed a Motion to Dismiss Plaintiff's Class Action Complaint. Dkt. No. 11. On January 20, 2021, Plaintiff filed a Motion to Amend the Complaint to add Pacific as a defendant. Dkt. No. 17. The Motion to Amend was granted and, on January 22, 2022, Plaintiff filed an Amended Complaint against Defendants Trinity and Pacific. Dkt. No. 19.

On February 11, 2021, Defendants filed a Motion to Dismiss the Amended Complaint, which was fully briefed. Dkt. Nos. 20-24. On January 6, 2022, pursuant to the Parties' joint request, this Court granted a stay of this case pending the Illinois Supreme Court decision in *McDonald v. Symphony Bronzeville Park LLC*, No. 126511. Dkt. No. 30. On February 3, 2022, the Supreme Court released an opinion in *McDonald* affirming the judgment of the Appellate Court that the

2

Illinois Workers Compensation Act ("WCA") does not preempt claims under BIPA. 2022 IL 126511, at ¶ 50. As a result, the stay was lifted.

On June 14, 2022, following the lift of the stay, the Court issued a memorandum and opinion denying Defendants' Motion to Dismiss the Amended Complaint and directing the Parties to proceed with discovery. Dkt. No. 38. Thereafter, the Parties exchanged written discovery and information that facilitated this Settlement.

### III. Summary of Settlement Terms (Ex. 1, Settlement Agreement)[1]

#### A. The Proposed Settlement Class (Ex. 1, Settlement Agreement, ¶¶ 30, 45)

The proposed Settlement Class includes a maximum total of 172 identified individuals who worked for Defendants during the class period and who used handscan and/or fingerscan timeclocks in conjunction with their employment. Defendants assert, and provided evidence to demonstrate, that they made an effort to comply with BIPA. Plaintiff contends Defendants' process fell short, yet the evidence resulted in negotiation of a gross settlement amount of $840 per class member. This is a slight reduction compared to amounts negotiated in other BIPA cases involving a full failure to comply. The Parties' compromise is reasonable keeping in mind the purpose of BIPA is to deter non-compliance. *See Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, ¶ 42.

The Class Representative seeks preliminary approval of a Settlement Class consisting of the following:

> All individuals who, during the Class Period, used a hand or finger or biometric identifier or biometric information for timekeeping or payroll purposes at Defendants' facilities within the state of Illinois and did not provide written consent in advance.

---

[1] Citations to the Settlement Agreement are in the headings of this Memorandum to avoid unnecessary multiplication of in-text citations. Capitalized terms not defined herein shall have the meaning set forth in the Class Action Settlement Agreement and Release ("Settlement" or "Settlement Agreement"), which is Exhibit 1.

3

**B.     Settlement Fund; Allocation of the Fund; Payments to Class Members
        (Ex. 1, Settlement Agreement, ¶ 30)**

While denying all liability and wrongdoing, Defendants have agreed to pay a Gross Settlement Fund of $154,480 ($840 per person based upon an estimated total Class Size of 172, plus an additional $10,000 for Settlement administration costs) to resolve the claims in this case on a class action basis. The Gross Settlement Fund is the maximum amount Defendants shall be obligated to pay under the Settlement. The "Net Fund" is the Gross Settlement Fund minus the following deductions, approved Class Counsel fees and litigation costs; the Settlement Administrator's costs; and the Class Representative's Service Award. The Net Fund shall be distributed pro rata to Class Members.

After all deductions are made, Class Members are estimated to receive a check in the net amount of $485. Unless they exclude themselves, all Class Members will automatically be sent a settlement check. Because Class Members are not required to submit a claim to receive payment, the process is streamlined to ensure that all Class Members are able to participate.

**C.     Uncashed Checks Will Be Distributed to a *Cy Pres* Recipient
        (Ex. 1, Settlement Agreement, ¶ 50)**

Under the terms of the Settlement, the entire Gross Settlement Amount will be distributed and **no portion of it shall revert** to the Defendant. Class members will have 120 days to cash their settlement payments. Funds from checks not cashed by the deadline will be distributed to Prairie State Legal Services as a *cy pres* recipient.

**D.     Release of Claims (Ex. 1, Settlement Agreement, ¶¶ 38-40 & § VII)**

Class Members who do not exclude themselves will release the Releasees, as defined in the Settlement Agreement, from all claims relating to Plaintiff's or the Class Members' biometric information while employed at Defendants, including by way of example, any claims arising out

of or relating to Defendants' storage, collection, capture, purchase, sale, disclosure, or other handling of biometric identifiers or biometric information. The named Plaintiff agreed to a broader release.

### E. Settlement Administration (Ex. 1, Settlement Agreement, ¶¶ 30, 42)

The Parties have selected Analytics Consulting, LLC to act as the Settlement Administrator. The Settlement Administrator's costs are estimated at $8,776. The Settlement allocates $10,000 for Settlement Administration, and any unused amounts will be distributed back to the Settlement Fund.

### F. Notice of Class Action Settlement (Ex. 1, Settlement Agreement, ¶ 61, Ex A)

Among other things, the proposed Notice of Class Action Settlement ("Notice") explains the following to Settlement Class Members: (1) what the Settlement is about; (2) how the payment is made, exclusion, or how to submit an objection; (3) how to obtain more information about the Settlement; (4) the monetary terms of the Settlement and how individual payments will be calculated; (5) the maximum amounts to be requested for attorney fees, costs, settlement administration, and Service Award; and (6) the Final Approval Hearing details.

### G. Distribution of Notice (Ex. 1, Settlement Agreement, ¶ 61)

First, the Settlement Administrator will provide the Notice by direct mail. Before mailing, the Settlement Administrator will update Settlement Class Members' addresses by running their names and addresses through the National Change of Address ("NCOS") database. For Settlement Class Members whose notices are returned as undeliverable without a forwarding address, the Settlement Administrator shall promptly run an advanced search to locate an updated address. Second, where email addresses are available for Settlement Class Members, the Settlement Administrator shall send the Notice by email.

### H. Service Award (Ex. 1, Settlement Agreement, ¶ 78)

Under the Settlement Agreement, Class Counsel may request that the Court award the Class Representative up to $7,500 as a Service Award for his work in prosecuting this lawsuit on behalf of the Settlement Class, providing detailed information to support the allegations (including for the amended complaint adding Pacific), providing his declaration in opposition to the Motion to Dismiss, answering written discovery, recovering money for the Settlement Class, and for his broad release of claims. Class Counsel will file the request for the Service Award with their motion for attorney fees and costs, described below.

### I. Attorneys' Fees and Litigation Costs (Ex. 1, Settlement Agreement, ¶ 75)

Under the Settlement Agreement, Class Counsel may request that the Court award them up to 35% of the Gross Settlement Fund as attorney fees plus their litigation costs. Class Counsel will file the request for attorneys' fees and litigation costs in advance of the Fairness Hearing.

## IV. The Court Should Grant Preliminary Approval

### A. Settlement of Class Action Litigation is Favored

Federal courts favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases).

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;
(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

    (3)    A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.* With this Motion, Plaintiff requests that the Court take the first step in the process by granting preliminary approval of the proposed Settlement.

"Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, Case No. 05-md-1720, 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019) (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)) (emphasis in original). As shown below, the Settlement satisfies these criteria and preliminary approval is justified.

    **B.**    **The Court Will Likely Be Able to Approve the Settlement Under Rule 23(e)(2)**

        **1.**    **The Class Representative and Class Counsel have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A)**

Class Counsel and the Class Representative pursued this case vigorously on behalf of a potential class. Throughout nearly two years of litigation, Class Counsel engaged in extensive motion practice and written discovery. Through written discovery and further negotiated exchange of information, Class Counsel obtained all of the relevant documents from Defendants for purposes of evaluating and resolving these claims. As a result of Class Counsel's and the Class Representative's sustained effort, the Parties reached a Settlement that makes meaningful monetary relief available to Class Members, with an appropriately tailored release of claims.

7

### 2. The Settlement Was Negotiated at Arm's Length – Rule 23(e)(2)(B)

The Settlement was the result of arm's-length negotiation between counsel experienced in BIPA litigation.

### 3. The Settlement Provides Adequate Relief to the Class – Rule 23(e)(2)(C)

This Settlement here exceeds other approved BIPA class settlements:

| Case | Judge | Date | Class Size | Per Class Member | Attorney Fees |
|---|---|---|---|---|---|
| *Kusinski v. ADP, LLC*, 17-CH-12364 (Cir. Ct. Cook Cty.) | Atkins | Feb. 10, 2021 | 320,000 | $250 net (assuming a 20% claims rate)[2] | 35% of total settlement |
| *Zhirovetskiy v. Zayo Group, LLC*, 17-CH-09323 (Cir. Ct. Cook Cty.) | Flynn | Apr. 8, 2019 | 2,475 | $450 gross | 40% of total settlement |
| *Marshall v. Life Time Fitness, Inc.*, 17-CH-14262 (Cir. Ct. Cook Cty.) | Tailor | Aug. 7, 2019 | 6,000 | $270 net[3] | One-third of total settlement |
| *Prelipceanu v. Jumio Corp.*, 18-CH-15883 (Cir. Ct. Cook Cty.) | Mullen | July 21, 2020) | Thousands | $262.28 net | 40% of total settlement |

The Settlement also represents a meaningful recovery when compared against average recoveries in class action settlements. *See In re Ravisent Techs., Incagi. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement of 12.2% of damages, citing a study by Columbia University Law School determining that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (cites omitted).

The Court should further evaluate the adequacy of relief based on the sub-factors below, Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv), each of which the Settlement satisfies.

---

[2]   While plaintiffs estimated this claims rate in their filings, the Final Approval Motion stated the claims rate was 12.5 percent.
[3]   The settlement also included dark web monitoring that the parties valued at $130 per class member.

### a. Costs, risks, and delay of trial and appeal

If the litigation had continued, it would have been complex, expensive, and protracted. Defendants had filed the Motion to Dismiss the Amended Complaint challenging Plaintiff's allegations that they did not comply with BIPA. The Motion to Dismiss was denied, as the Court found the issues subject to additional discovery. *See* Dkt. No. 38, pps. 7-8. The disputed issues, however, facilitated this Settlement as the Parties considered the risks of continued litigation.

Appeals that were pending at the time of negotiations were also considered. Recently, on February 2, 2023, the Illinois Supreme Court decided the *Tims v. Black Horse Carriers, Inc.* 2023 IL 127801 appeal and applied a limitations period of 5 years for every violation of BIPA. However, the Parties agreed to settlement terms for a five-year class period prior to the decision by the Illinois Supreme Court in *Tims*.

Additionally, on February 17, 2023, the Illinois Supreme Court decided the appeal of *Cothron v. White Castle*, No. 128004, which involves the question of accrual of a BIPA claim. The *Cothron* decision found in favor of accrual at the time of each finger scan, not just the first. 2023 IL 128004, ¶ 1. The Illinois Supreme Court recognized that per scan liability allows for multiple and repeated violations and "astronomical" damages awards and found that the statutory language clearly supports recovery for "each violation." *Id.* at ¶ 40

The *Cothron* Court provided:

> This court has repeatedly recognized the potential for significant damages awards under the Act. *Rosenbach*, 2019 IL 123186, ¶¶ 36-37; *McDonald*, 2022 IL 126511, ¶ 48. This court explained that the legislature intended to subject private entities who fail to follow the statute's requirements to substantial potential liability. *Rosenbach*, 2019 IL 123186, ¶ 36. The purpose in doing so was to give private entities "the strongest possible incentive to conform to the law and prevent problems before they occur." *Id.* ¶ 37.

The Court further noted, "We believe that the plain language of section 15(b) and 15(d) demonstrates *that such violations occur with every scan or transmission*." *Id.* ¶ 30 (emphasis

9

added). However, the *Cothron* decision was an unknown when the Parties settled and is also the subject of a motion for rehearing.

The settlement negotiations took into account any potential uncertainty in the *Tims* and *Cothron* appeals. Further, as shown by the extensive motion practice in this case, Defendants identified and alleged facts supporting defenses to the class certification and the merits of the claims. Given the potential risks, Plaintiff was open to settlement discussions. While Plaintiff was confident in the claims, an adverse ruling as to the issues would greatly limit or even gut this case, and there is a benefit to having a settlement now, rather than years from now.

### b. Effectiveness of the proposed method of distributing relief to Class Members

The Settlement Administrator will send Notice via direct mail and, where available, email. Ex. 1, Settlement Agreement, ¶ 61. This is a comprehensive notice program that rivals those implemented in similar settlements. Class Members do not have to take any affirmative steps in order to receive a settlement payment. All Class Members will be mailed a check so long as they do not elect to exclude themselves from the settlement. The Settlement Administrator will distribute funds to Class Members via check to their last known mailing address.

### c. The terms of the proposed attorney fee award, including timing of payment

Settlement Class Counsel will seek an award of attorney fees of up to 35% of the Gross Settlement Fund plus litigation costs. Ex. 1, Settlement Agreement ¶ 75. The requested fee is equal to or below the fees awarded in similar BIPA class settlements. *See* BIPA Settlement Chart. And the Settlement provides for payment of any attorney fees awarded at the same time as payments to Settlement Class Members; there is no priority for Settlement Class Counsel. Ex. 1, Settlement Agreement ¶ 77.

### d. Any Agreement required to be identified under Rule 23(e)(3)

The Settlement Agreement is Exhibit 1 to this Motion. There are no side agreements regarding the Settlement Class or attorney fees related to this Settlement.

### 4. The Settlement Treats Settlement Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)

The Settlement treats Class Members equally by distributing awards from the Net Settlement Fund on a *pro rata* basis. Ex. 1, Settlement Agreement, ¶ 50. All employees who fall under the class definition will be sent a check to their last known address for their pro rata share of the net amount.

## C. The Court Will Likely Be Able to Certify the Settlement Class for Purposes of Judgment on the Settlement – Rule 23(e)(1)(B)(ii)

### 1. Certification Will Be Appropriate Under Rule 23(a)

To obtain class certification, Plaintiff must demonstrate that his claims meet the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). As shown below, all of the elements of Rule 23(a) and (b)(3) are met here.

#### a. Numerosity

Courts consistently hold that if there are more than 40 class members, numerosity is satisfied. *See, e.g., Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). The estimated class size here is 172, Ex. 1, Settlement Agreement, ¶ 30, which satisfies numerosity.

#### b. Commonality

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). Those common issues must be susceptible to common answers. In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court summarized the Rule 23(a)(2) requirement as follows:

> What matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common

11

> *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

564 U.S. 338, 350 (2011). The claims of Class Members can be resolved in a "single stroke" by answering the following common question: did Defendants collect, possess, or disclose the biometric data without following BIPA's notice and consent requirements? Answering this common question resolves liability for all Class Members. Thus, commonality will be met here.

### c. Typicality

A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted). The requirement is meant to ensure that the named representative's claims "have the same essential characteristics as the claims of the class at large." *Id.* (quotations and citation omitted)).

The claims of the Settlement Class Representative and Settlement Class Members arise from the same conduct: Defendants' alleged use of a biometric timekeeping system for its Illinois employees. Typicality will be met.

### d. Adequacy of the Class Representative

The adequacy of representation component has three elements: (1) the claims of the class representative cannot conflict with the claims of the other class members; (2) the class representative's interest in the litigation outcome must be sufficiently strong to ensure that he is a vigorous advocate for the class; and, (3) counsel for the class representative must be competent, experienced, and able to conduct the litigation with that necessary vigor. *Gammon v. G.C. Servs., L.P.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995). "The burden of demonstrating adequacy under this standard, nevertheless, is not a heavy one." *Nielsen v. Greenwood*, No. 91 C 6537, 1996 WL 563539, at *5 (N.D. Ill. Oct. 1, 1996).

12

### i. The Class Representative has an interest in the litigation and has no conflict with Class Members

The Class Representative alleges the same claims as Class Members and has no interests antagonistic to them. Thus, the Class Representative has "a clear stake in a successful outcome – [] damages for [herself] and the class – that raises no specter of antagonistic interests." *Pierre v. Midland Credit Mgmt., Inc.,* 2017 WL 1427070, at *8-9 (N.D. Ill. Apr. 21, 2017). Plaintiff has taken an active role in pursuing this claim for nearly three years. He has exhibited competence by answering written discovery and regularly providing information to his attorneys, including a declaration in opposition to Defendant's Motion to Dismiss. Plaintiff assisted in any way that he was asked, engaging in many interviews and reviews of information with his attorneys.

### ii. Class Counsel is experienced and qualified

Settlement Class Counsel will also fairly and adequately protect the interests of the Class Members. A court considers the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims; (2) class counsel's experience in handling complex litigation and class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g).

Class Counsel are experienced class action attorneys and have been appointed class counsel in numerous actions in federal and state courts, including other BIPA class actions. Ex. 2, Baltabols Declaration. In this case, Class Counsel demonstrated commitment to the Class by completing complex briefing and analysis along with written discovery.

### 2. Certification Will Be Appropriate Under Rule 23(b)

Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members,

and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These prerequisites are satisfied.

### a. Common questions predominate

The Rule 23(b) predominance requirement looks to whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997). "Thus, the Plaintiff bears the burden of demonstrating 'that the elements of liability are capable of proof at trial through evidence that is common to the class rather than individual to the members.'" *Kernats, et al. v. Comcast Corp.,* Case Nos. 09 C 3368 and 09 C 4305, 2010 WL 4193219, at *7 (N.D. Ill. Oct. 20, 2010). Satisfaction of this criterion normally turns on the answer to one basic question: is there an essential common factual link between all class members and the Defendants for which the law provides a remedy? The common question predominating in this case is whether Defendants collected, possessed, stored, and/or used Settlement Class Members' biometric data without following the requirements of BIPA. The answer to this question determines Defendants' liability under BIPA for all potential persons in the Settlement Class and therefore predominates over any individual questions.

### b. A class action is a superior mechanism

The superiority inquiry requires a court to compare alternatives to class treatment and determine if any alternative is superior. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). This is particularly true in actions like this one, where numerous individual claimants each suffer a relatively small harm. "Rule 23(b)(3) was designed for situations . . .in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*,

14

434 F.3d 948, 953 (7th Cir. 2006). Here, the alternative to class resolution is a myriad of individual lawsuits for recoveries possibly less than $1,000, plus attorneys' fees and costs.

### D.  Plaintiff's Notice Program and Class Notice Form Merit Approval (Ex. 1, Settlement Agreement, ¶ 61 and Exhibit A)

The proposed Notice complies with due process and the Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).Fed. R. Civ. P. 23(c)(2)(B).

The plan for the Settlement Administrator to distribute Notices directly to Settlement Class Members by U.S. mail and, when possible, via email, is reasonable.

### V.  Conclusion

Because the Settlement is fair and provides significant monetary relief to the Settlement Class, the Court should grant preliminary approval and enter the proposed Preliminary Approval Order, which will be submitted to the Court via its proposed order email address.

Dated: March 22, 2023

Respectfully submitted,

/s/ Mara Baltabols
One of Plaintiff's Attorneys

David Fish (dfish@fishlawfirm.com)
Mara Baltabols (mara@fishlawfirm.com)
Fish Potter Bolaños LLC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
*Attorneys for Plaintiff and Others Similarly Situated*

15

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system on March 22, 2023, which will serve a copy on all counsel of record.

/s/ Mara Baltabols