# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ISIDRO CALONIA, JR., individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| | Case No. 2020-cv-6130 |
| v. | |
| | Honorable Thomas M. Durkin |
| TRINITY PROPERTY CONSULTANTS, LLC and PACIFIC PERSONNEL SERVICES, INC., | |
| Defendants. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR JUDGMENT AND
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Isidro Calonia, Jr. ("Plaintiff"), individually and on behalf of all other similarly situated individuals, by and through his undersigned counsel hereby moves for judgment and final approval of the class action settlement reached by the Parties through arms-length negotiations. Defendants Trinity Property Consultants, LLC and Pacific Personnel Services, Inc. ("Trinity" or "Defendants"), do not oppose this Motion. As detailed below, notice was robust (sent via mail and email in both English and Spanish) with no requests for exclusion and no objections. Participating class members will each receive a substantial direct cash benefit in line with the average amount received by participating class members in other settlements throughout Illinois under the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA" or "the Act").

## I.      INTRODUCTION

As more fully described herein and in Plaintiff's Fee Motion, this is a $154,480 **non-reversionary** settlement in which the entire common fund is being distributed. All Class Members who did not exclude themselves will receive a check without having to submit claims, and any residual funds will be paid to a *cy pres* recipient. Following this Court's preliminary approval of the Parties' Settlement Agreement and Release ("Settlement Agreement"), attached to this motion as Exhibit 1, on May 1, 2023, administration proceeded on schedule. In accordance with the Court-approved plan described in the Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval") and as ordered by this Court, direct individual notice of the Settlement was mailed (and emailed, where available) to all putative settlement class members in both English and Spanish ("Class Members"). See Exhibit 2, Barazesh Decl. at ¶ 9. As detailed in the Motion for Preliminary Approval, all Class Members who did not exclude themselves from the settlement will receive a settlement payment. At the conclusion of the claim period, there were zero requests for exclusion, and zero objections. *Id.* at ¶¶ 16,17.

1

Plaintiff respectfully submits that the complete absence of objections and exclusions speak to the fairness, reasonableness, and adequacy of the Settlement, the effectiveness of the Notices, as well as the ease of the claim administration plan. The overwhelmingly positive reaction from Class Members also underscores the value the Class Members place on the terms of the Settlement agreed to by the Parties. This is a fair and reasonable result, particularly in view of the significant known and unknown risks and anticipated delays involved in litigating the merits of BIPA claims and inherent in pursuing these claims individually for a large percentage of Class Members.

For the reasons set forth below, both the form and substance of this Settlement satisfy the standards for final approval, and it should therefore be approved.

At the July 24 Final Hearing, the Defendants will be requesting that the Court wait until August 3, 2023 to enter the Final Order in this case to provide the full 90-day period from the date all Class Action Fairness Act (CAFA) notices were mailed. Plaintiff's counsel does not object to this request. It will not delay the payments in the case.[1]

## II.     THE ALLEGATIONS

Plaintiff, Isidro Calonia, Jr. ("Calonia"), was employed by Defendants from in or about April 2020, Complaint ¶ 27. During his employment, Defendants required Mr. Calonia and similarly situated individuals to clock in and out by scanning his fingerprints *Id*. ¶¶ 28, 29. Plaintiff alleges that Defendants failed to provide Mr. Calonia with written notice detailing how or why they were collecting, capturing, storing, and/or using his biometric data, or provide any policies concerning data retention. *Id*. ¶¶ 30, 31. Plaintiff further alleges that Defendants did not obtain a written release from Plaintiff or the putative class members before it collected, captured or otherwise obtained their biometric data. *Id*. ¶ 32.

---

[1] Despite the request for the delayed Final Order, all parties agree that the hearing should go forward on July 24, because it is already on the calendar and was the date included in the class notice.

### III.     PROCEDURAL HISTORY

On June 12, 2020, Plaintiff filed a Class Action Complaint in the Circuit Court of DuPage County, Chancery Division, alleging that Defendant Trinity violated BIPA by requiring him and other employees to use a biometric timekeeping system as part of their jobs. (Dkt. No. 1-1).  In particular, Plaintiff alleged violations of BIPA by failing to do four things:

> 1.   Properly inform Plaintiff and Class Members in writing that their biometric information and/or identifiers were being collected;
>
> 2.   Properly inform Plaintiff and Class members in writing of the specific purpose and length of time for which their biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information was being collected, stored, and used, as required by BIPA;
>
> 3.   Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information, as required by BIPA; nor
>
> 4.   Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information, as required by BIPA.

On January 8, 2021, Trinity removed the Litigation from state court to the United States District Court for the Northern District of Illinois. Dkt. No. 1. On December 7, 2020, Trinity filed a Motion to Dismiss Plaintiff's Class Action Complaint. Dkt. No. 11. On January 20, 2021, Plaintiff filed a Motion to Amend the Complaint to add Pacific as a defendant. Dkt. No. 17. The Motion to Amend was granted and, on January 22, 2022, Plaintiff filed an Amended Complaint against Defendants Trinity and Pacific. Dkt. No. 19.

On February 11, 2021, Defendants filed a Motion to Dismiss the Amended Complaint, which was fully briefed. Dkt. Nos. 20-24. On January 6, 2022, pursuant to the Parties' joint request, this Court granted a stay of this case pending the Illinois Supreme Court decision in *McDonald v. Symphony Bronzeville Park LLC*, No. 126511. Dkt. No. 30. On February 3, 2022, the Supreme Court released an opinion in *McDonald* affirming the judgment of the Appellate Court that the

Illinois Workers Compensation Act ("WCA") does not preempt claims under BIPA. 2022 IL 126511, at ¶ 50. As a result, the stay was lifted.

On June 14, 2022, following the lift of the stay, the Court issued a memorandum and opinion denying Defendants' Motion to Dismiss the Amended Complaint and directing the Parties to proceed with discovery. Dkt. No. 38. Thereafter, the Parties exchanged written discovery and information that facilitated this Settlement.

On April 7, 2023, the Court held a hearing on the Motion for Preliminary Approval, which was granted. Dkt No. 55. The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002). The first two steps in this process have occurred. With this Motion, Plaintiff respectfully requests that the Court take the third and final step in the process by granting final approval of the Settlement.

## IV.    SUMMARY OF PROPOSED SETTLEMENT TERMS

### A.  The Settlement Class

The Settlement Class includes a maximum total of 172 identified individuals who worked for Defendants during the class period and who used handscan and/or fingerscan timeclocks in

conjunction with their employment. Defendants assert, and provided evidence to demonstrate, that they made an effort to comply with BIPA. Plaintiff contends Defendants' process fell short, yet the evidence resulted in negotiation of a gross settlement amount of $840 per class member, plus an additional $10,000 for settlement administrator ($154,480 total). This is a slight reduction compared to amounts negotiated in other BIPA cases involving a full failure to comply. The Parties' compromise is reasonable keeping in mind the purpose of BIPA is to deter non-compliance. *See Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, ¶ 42.

For settlement purposes only, the Court preliminarily approved a Settlement Class consisting of the following:

> All individuals who, during the Class Period, used a hand or finger or biometric identifier or biometric information for timekeeping or payroll purposes at Defendants' facilities within the state of Illinois and did not provide written consent in advance. Dkt No. 55. ¶ 5.

### B. Administration and Notice

As described in the Motion for Preliminary Approval, the administration and notice procedure were designed to provide putative class members with direct written notice of the Settlement. Consistent with draft notices submitted to the Court at the time of preliminary approval, the detailed Notices fully described the settlement terms and provided information clearly informing Class Members of their options and how to opt out, object, or obtain additional information from the Claims Administrator and/or directly from Class Counsel, among other things. *See* Exhibit 2. The Notice identified the amounts that could be paid out of the Gross Settlement Fund (service award, attorneys' fees, litigation costs, administration expenses) and clearly stated that subject to Court approval, if all Class Members participate in the Settlement, they would receive a net payment of approximately $485.

In compliance with the Settlement Agreement and consistent with the Order Granting Preliminary Approval ("Preliminary Approval Order"), Defendants timely provided the Claims Administrator with a list of all the individuals identified as Class Members ("Class List") along with all known contact information. *See* Ex. 2 at ¶ 6. The Settlement website, http://www.TrinityBIPAsettlement.com, also posted the Notice and the Settlement Agreement and the Preliminary Approval Order. The Claims Administrator cross-referenced the names and addresses with the U.S. Postal Service's ("USPS") National Change of Address Database and, through this method, updated any outdated addresses. *Id*. ¶ 7.

On May 1, 2023, the Claims Administrator mailed and emailed (where available) the Class Notice. *Id*. ¶¶ 9,10. After the initial mailing, USPS returned 16 Notices to the Claims Administrator. *Id*. ¶ 12. Through additional searches, the Claims Administrator was able to locate updated addresses until ultimately only two remained undeliverable. *Id*. ¶¶ 12, 13.

After the conclusion of the claims period, Analytics received no requests for exclusion and no objections to the Settlement. *Id*. ¶¶ 16,17. In total, 169 individuals, who constitute 98.25% of the potential Class Members, received notice via mail and/or email. *Id*. ¶ 15.

### C.  Class Release

All Class Members who did not timely exclude themselves from the Settlement shall be bound by the Release set forth in the Settlement Agreement.  Class Members shall be bound by all determinations and orders pertaining to the Settlement.  Plaintiff and all other Class Members who did not exclude themselves from the Settlement will fully release Defendants, consistent with the Settlement Agreement. *See* Exhibit 1, ¶ 38.

### D.  Monetary Relief for Participating Class Members

While denying all liability and wrongdoing, Defendants have agreed to pay a Gross

Settlement Fund of $154,480 to resolve the claims in this case on a class action basis. The Gross Settlement Fund is the maximum amount that Defendants shall be obligated to pay under the Settlement and is allotted solely for the 172 individuals identified in the Defendants' Class List produced on April 26, 2023. Only those individuals shall be bound by the Settlement Agreement. The "Net Fund" is the Gross Settlement Fund minus the following deductions, once approved by the Court: Settlement Class Counsel's attorney fees and litigation costs; the Settlement Administrator's costs; and the Settlement Class Representative's Service Award. The Net Fund shall be distributed pro rata to Settlement Class Members.

Unless they exclude themselves from the settlement, all Class Members will automatically receive a settlement check. Because Class Members are not required to submit a claim to receive payment, the process is streamlined to ensure that all Class Members are able to participate.

Under the terms of the Settlement, the entire Gross Settlement Amount will be distributed and **no portion of it shall revert** to the Defendants. Settlement Class Participants will have 120 days to cash their settlement payments. Funds from checks not cashed by the deadline will be distributed to Prairie State Legal Services as a *cy pres* recipient.

### E. Class Representative Service Award

Prior to the filing of this Motion, Class Counsel filed a Motion for Attorneys' Fees, Costs, and Service Award (Fee Motion). In exchange for his service on behalf of the Class Members, the Settlement Agreement provides for a Service Award of $7,500 to be paid to Isidro Calonia, Jr. As explained in the Fee Motion, Mr. Calonia was far from a passive client in this case. He participated in Class Counsel's investigation of his claims and – prior to filing and throughout this litigation in response to Defendants' Motions to Dismiss. He provided information as requested by his counsel before and throughout the litigation, was constantly available, and assisted Plaintiff's counsel

whenever called upon. Mr. Calonia took substantial direct and indirect risk by bringing the action in his name and agreeing to participate fully in discovery and trial. The time, risk, and effort Mr. Calonia put into the case should be recognized and encouraged through the Service Award.

### F. Attorneys' Fees and Costs

Consistent with the Fee Motion, Class Counsel requests 35% of the Settlement Fund ($54,068) as attorneys' fees and $404.94 for reimbursement of out-of-pocket litigation expenses. *See* Exhibit 3, Baltabols Dec. As more fully explained in the Fee Motion, courts in this Circuit have regularly awarded 40% of the gross fund as attorneys' fees in common fund class action settlements. Class Counsel also requests $9,126 in Settlement administration costs, which is a slight increase from the Fee Motion request due to added fees for translation of the Notice to Spanish.

## V.      FINAL APPROVAL IS WARRANTED

Federal courts strongly favor and encourage settlements, particularly where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that the "claims, issues, or defenses of a certified class...may be settled...only with the court's approval...after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e); *AIG v. ACE INA Holdings*, No. 07 CV 2898, 2012 WL 651727, at *1 (N.D. Ill. Feb. 28 2012); *Uhl v. Thoroughbred Tech. & Tel., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Rule 23(e)(2) sets out that a court must consider whether (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the settlement treats class members equitably

relative to each other. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018); *see, e.g., Snyder v. Ocwen Loan Servicing*, No. 14 CV 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

In deciding whether a settlement is fair, reasonable, and adequate, courts consider the following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the Defendants' ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of proceedings and the amount of discovery completed. *Wong v. Accretive Health*, 773 F.3d 859, 863 (7th Cir. 2014) (the "*Wong* factors"); *accord Synfuel v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Courts in the Seventh Circuit continue to analyze these factors in tandem with Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g., In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019). Applying these factors, the Court should find that the Settlement is fair, reasonable, adequate, and should be approved.

### A. Rule 23(e)(2) Factors Favor Final Approval.

#### i. The Class Representative and Class Counsel Have Adequately Represented the Class

To establish that class counsel and the class representative have adequately represented the class, courts consider their performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. This factor is satisfied where the class representative diligently participated and class counsel vigorously litigated. *Snyder*, 2018 WL 4659274, at *4; *see also Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021) (finding this factor satisfied when class counsel vigorously litigated the case "both

through motion practice on the legal merits and through discovery of facts and potential damages"). Key to this factor is whether class counsel and the class representative had sufficient information to negotiate a class-wide settlement. *See Snyder*, 2018 WL 4659274 at \*4. This element corresponds with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863 (internal quotations omitted).

Class Counsel and the Class Representative here vigorously pursued this case for several years prior to negotiating a settlement. As described above, Plaintiff has briefed two motions to dismiss, sought depositions of key witnesses, exchanged initial disclosures, issued and received written discovery. Mr. Calonia cooperated throughout the entirety of this matter, including answering written discovery, fielding questions, and regularly conferring with counsel throughout the proceedings. In total, the parties engaged in significant, substantive discovery and litigation that allowed them to comprehensively review and weigh the available evidence, weigh the risks and probabilities of success, and calculate a range of potential damages prior to engaging in settlement discussions. Accordingly, the Class Representative and Class Counsel have adequately represented the proposed Settlement Class and Rule 23(e)(2)(A) is satisfied.

ii.     The Settlement was Reached Through Arm's-Length, Non-collusive Negotiations

The settlement terms were negotiated at arms-length between attorneys experienced in the litigation, and settlement of class actions. Counsel for both parties understand the unique and unsettled legal and factual issues involved in the case. BIPA litigation is an expanding and rapidly evolving area of law, and there existed multiple questions of law that remained unsettled by the courts. The Settlement was reached only after a substantial amount of litigation, after the parties' counsel assessed the strengths and weaknesses of the case throughout the course of discovery and culminated in settlement following lengthy settlement discussions. Through their experience, the

10

attorneys were well positioned to evaluate the strengths and weaknesses of their clients' positions, as well as the appropriate basis upon which to settle the case. Accordingly, the settlement was properly obtained through arm's-length negotiations and was non-collusive.

iii.     <u>The Settlement Secures Positive Relief for Class Members</u>

The Settlement provides more than adequate relief for Class Members. After all deductions are made Settlement Class Members are estimated to receive a check in the net amount of $485. This is a substantial per-person recovery that leaves little doubt that the benefit to the Class is quite positive. The per-person recovery substantially exceeds the amounts awarded to individuals in many previously approved BIPA class settlements. *Compare with Baldwin v. Metrostaff*, No. 2019-CH-04285 (Il. Cir. Ct. Cook Cnty. May 3, 2022) (Wilson, J.) (approving BIPA settlement of $292.98 net per person for 2,251 class members); *Zhirovetskiy v. Zayo Grp., LLC*, No. 2017-CH-09323 (Il. Cir. Ct. Cook Cnty. Apr. 8, 2019) (Flynn, J.) (approving reversionary fund for 2,200 class members, which capped payments at $400 <u>gross</u> per member); *Zepeda v. Kimpton Hotel & Rest.*, No. 2018-CH-02140 (Il. Cir. Ct. Cook Cnty. Dec. 5, 2018) (Atkins, J.) ($500 gross); *Taylor v. Sunrise Senior Living Mgmt., Inc.*, No. 2017-CH-15152 (Il. Cir. Ct. Cook Cnty. Feb. 14, 2019) ($115 or $40) (Loftus, J.); *Sharrieff v. Raymond Mgmt. Co.*, 2018-CH-01496 (Il. Cir. Ct. Cook Cnty. Aug. 1, 2019) (Cohen, J.) ($500 gross).

Critically, the fact that the Settlement Fund is non-reversionary maximizes the per-claimant recovery without monetary benefit or reversion to the Defendants. *See, e.g., Zhirovetskiy*, 2017-CH-09323 (reverted up to $490,000 of funds to defendant); *Rosenbach v. Six Flags Ent. Corp.*, No. 2016-CH-00013 (Il. Cir. Ct. Lake Cnty. Oct. 29, 2021) (approving reversionary fund, which capped class member payments at $200 or $60 depending on date of finger scan and reverted unclaimed funds to defendant); *Lark v. McDonald's USA, LLC*, No. 17-

11

L-559 (Il. Cir. Ct. St. Clair Cnty. Feb. 28, 2022) (approving reversionary fund, which capped class member payments at $375 or $190 depending on date of finger scan and reverted millions of dollars in unclaimed funds to defendants); *Marshall v. Lifetime Fitness, Inc.*, No. 2017-CH-14262 (Il. Cir. Ct. Cook Cnty. July 30, 2019) (approving claims-made reversionary fund of $270 per class member, reverting the remainder to defendant).  Here, none of the funds will revert to Defendants, which serves the deterrent function of the statute and maximizes the benefits to the Class.  *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶¶ 36, 37, 129 N.E.3d 1197, 1207.  Any residual funds will benefit Prairie State Legal Services. Ex. 1, ¶ 50.c.

### B.  The Proposed Settlement is Fair, Reasonable, and Adequate.

#### i.  Further Litigation Would be Highly Complex, Protracted, and Expensive to Address the Merits of Plaintiff's Claims and Class Certification

If the litigation had continued, it would have been complex, expensive, and protracted. Defendants had filed the Motion to Dismiss the Amended Complaint challenging Plaintiff's allegations that they did not comply with BIPA. The Motion to Dismiss was denied, as the Court found the issues subject to additional discovery. *See* Dkt. No. 38, pps. 7-8. The disputed issues, however, facilitated this Settlement as the Parties considered the risks of continued litigation.

Appeals that were pending at the time of negotiations were also considered. Recently, on February 2, 2023, the Illinois Supreme Court decided the *Tims v. Black Horse Carriers, Inc.* 2023 IL 127801 appeal and applied a limitations period of 5 years for every violation of BIPA. However, the Parties agreed to settlement terms for a five-year class period prior to the decision by the Illinois Supreme Court in *Tims*.

Additionally, on February 17, 2023, the Illinois Supreme Court decided the appeal of *Cothron v. White Castle*, No. 128004, which involves the question of accrual of a BIPA claim. The *Cothron* decision found in favor of accrual at the time of each finger scan, not just the first. 2023

12

IL 128004, ¶ 1. The Illinois Supreme Court recognized that per scan liability allows for multiple and repeated violations and "astronomical" damages awards and found that the statutory language clearly supports recovery for "each violation." *Id.*at ¶ 40

The *Cothron* Court provided:

> This court has repeatedly recognized the potential for significant damages awards under the Act. *Rosenbach*, 2019 IL 123186, ¶¶ 36-37; *McDonald*, 2022 IL 126511, ¶ 48. This court explained that the legislature intended to subject private entities who fail to follow the statute's requirements to substantial potential liability. *Rosenbach*, 2019 IL 123186, ¶ 36. The purpose in doing so was to give private entities "the strongest possible incentive to conform to the law and prevent problems before they occur." *Id.* ¶ 37.

The Court further noted, "We believe that the plain language of section 15(b) and 15(d) demonstrates *that such violations occur with every scan or transmission*." *Id.* ¶ 30 (emphasis added). However, the *Cothron* decision was unknown when the Parties settled and is also the subject of a petition for rehearing.

The settlement negotiations took into account any potential uncertainty in the *Tims* and *Cothron* appeals, as the key terms were negotiated prior to those decisions. Further, as shown by the extensive motion practice in this case, Defendants identified and alleged facts supporting defenses to the class certification and the merits of the claims. Given the potential risks, Plaintiff was open to settlement discussions. While Plaintiff was confident in the claims, an adverse ruling as to the issues would greatly limit or even gut this case, and there is a benefit to having a settlement now, rather than years from now.

ii.     Administration and Notice Procedures were Robust, and the Settlement has been Well Received by the Class Members

As described herein, class administration and notification procedures were robust and employed the best mechanisms to thoroughly identify and notify Class Members at the earliest possible juncture, providing them with as much time as possible under the circumstances to opt

13

out or object to the settlement. The Claims Administrator then performed multiple searches to update addresses. Of the 172 Class Members, 169 Settlement Class Members (98.25%) received notice. None of the Class Members opted out or objected to the settlement. *See McDaniel v. Qwest Commc'ns Corp.*, No. CV 05 C 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) (granting final approval of class settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon []' and 'indicates the appropriateness of the request[]'").

The lack of objectors denotes support for the settlement and strongly favors a finding that it is "fair and reasonable." *Am. Civil Liberties Union v. United States Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002); *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 6406084 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement"); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) ( "[t]he absence of objection to a proposed class settlement is evidence that the settlement is fair, reasonable and adequate"). The fact that none of Class Members have neither opted-out nor filed objections to the proposed Settlement is "strong circumstantial evidence favoring settlement." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2000).

All Class Members who did not exclude themselves will receive a check without having to submit claims. Since the Class Members did not have to submit claims in order to participate, this means 169 out of 172 Class Members (i.e., 98.25%) are expected to receive direct cash payments. Claims-made class settlements typically result in less than 15% of all eligible members receiving payment. *See McLaughlin on Class Actions § 6:24* (8th ed.) ("claims-made settlements typically have a participation rate in the 10–15 percent range."); *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 119-20 (2007) (noting that it

is not unusual to have participation rates of 10 to 15% and examining examples of rates lower than 5%); *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FED. TRADE COMM'N, 11 (Sept. 2019) ("the median calculated claims rate was 9%, and the weighted mean (i.e., cases weighted by the number of notice recipients) was 4%."). This is a notice and participation rate with far greater success than typically achieved in class settlements and warrants final approval.

iii.    The Opinion of Competent Counsel Weighs in Favor of Approval

Here, Class Counsel affirms that this settlement provides a fair value and a significant benefit to the members of the Class, which meets or exceeds the typical BIPA class settlement. Class Counsel strongly endorses this Settlement. These facts weigh heavily in favor of final approval. *See McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d. 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement, and it was achieved after arms-length negotiations. . . suggest that the settlement is fair and merits final approval").

**VI.    CONCLUSION**

Plaintiff respectfully requests that the Court enter an Order granting final approval of the Settlement. A copy of the proposed final order is attached as Exhibit 4.

Respectfully submitted,

Dated: July 14, 2023

/s/ Mara Baltabols
One of Plaintiff's Attorneys

Fish Potter Bolaños PC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
 docketing@fishlawfirm.com
*Attorneys for Plaintiff and Others Similarly Situated*

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system on July 14, 2023, which will serve a copy on all counsel of record.

/s/  Mara Baltabols